IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § | No. 4:21-CR-281<br>Judge Mazzant |
| SINOJ KALLAMPLACKAL JOSEPH | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

*The Defendant and His Entities*

1. **Sinoj Kallamplackal Joseph (Joseph)** was a resident of McKinney, Texas, in the Eastern District of Texas.

2. MK Analytics, LLC (MK Analytics) registered with Wyoming's Office of the Secretary of State and filed its Certificate of Organization on May 9, 2020. **Joseph** exercised ownership of and control over MK Analytics.

3. Sanbi Solutions, LLC (Sanbi) registered with the Wyoming Office of the Secretary of State and filed its Certificate of Organization on May 20, 2020. **Joseph** exercised ownership of and control over Sanbi.

4. KMS Traders Group, LLC (KMS Traders) registered as an operating company with the Wyoming Secretary of State on July 1, 2020. **Joseph** exercised ownership of and control over KMS Traders.

FILED
OCT 1 3 2021
Clerk, U.S. District Court
Texas Eastern

*The Small Business Administration*

5. The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

6. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

*The Paycheck Protection Program*

7. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP).

8. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses, and (b) number of employees. These figures

were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

9. A PPP loan application was processed by a participating lender. If a PPP loan application were approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

***Relevant Financial Institutions***

11. Bank 1 was a federally insured financial institution and an online-focused community bank based in Boston, Massachusetts. Bank 1 participated in the Small Business Administration's Paycheck Protection Program as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

12. Sanbi and KMS Traders maintained accounts at Bank 1. **Joseph** was the only individual with signatory authority on those accounts.

13. Bank 2 was a federally insured financial institution based in Tupelo, Mississippi with branches throughout the United States.

14.     MK Analytics maintained an account at Bank 2.  **Joseph** was the only individual with signatory authority on the account.

## The Scheme to Defraud

15.     From in or about April 2020, and continuing through in or about September 2020, the exact dates being unknown, in the Eastern District of Texas, and elsewhere, the defendant, **Sinoj Kallamplackal Joseph**, knowingly devised and intended to devise a scheme and artifice to defraud Bank 1 and the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, namely by filing false and fraudulent applications for PPP funds.

## Purpose of the Scheme and Artifice

16.     It was the purpose of the scheme and artifice for the defendant, to unjustly enrich himself by obtaining PPP loan proceeds through materially false and fraudulent representations about his companies, including KMS Traders, MK Analytics, and Sanbi, in PPP loan applications.

## Manner and Means

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among others, the following:

***MK Analytics, LLC***

17.     In furtherance of the scheme, on or about May 20, 2020, **Joseph** submitted a materially false PPP application to Radius Bank in the name of MK Analytics, LLC seeking PPP funds (the MK Analytics PPP Application).  **Joseph** signed the MK Analytics PPP Application as the Manager of MK Analytics.  **Joseph** also certified that

the application and the information provided in all supporting documents and forms was true and accurate.

18. The MK Analytics PPP Application falsely stated that MK Analytics' average monthly payroll was $142,450 and that the company had 4 employees. In support of the application, **Joseph** submitted several false payroll documents, including Employer's Quarterly Federal Tax Returns (IRS Form 941s) for MK Analytics, an Employer's Annual Federal Unemployment Tax Return (IRS Form 940) for MK Analytics, and other fraudulent payroll records.

19. Radius Bank approved the MK Analytics PPP Application and, on June 1, 2020, dispersed PPP funds of $267,187 into MK Analytics' business checking account xxxx-426-6 at BancorpSouth. **Joseph** was the only individual with signatory authority on the account.

*Sanbi Solutions, LLC*

20. In furtherance of the scheme, on or about June 2, 2020, **Joseph** submitted a materially false PPP application to Radius Bank in the name of Sanbi Solutions, LLC seeking PPP funds (the Sanbi PPP Application). **Joseph** signed the Sanbi PPP Application as the Finance Manager of Sanbi. **Joseph** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

21. The Sanbi PPP Application falsely stated that Sanbi's average monthly payroll was $370,835 and that the company had 42 employees. In support of the

application, **Joseph** submitted several false payroll documents, including IRS Form 941s for Sanbi, an IRS Form 940 for Sanbi, and other fraudulent payroll records.

22. Radius Bank approved the Sanbi PPP Application and, on June 19, 2020, dispersed PPP funds of $927,087 into Sanbi's business checking account xxxxxx5867 at Radius Bank. **Joseph** was the only individual with signatory authority on the account.

*KMS Traders Group, LLC*

23. In furtherance of the scheme, on or about June 23, 2020, **Joseph** submitted a materially false PPP application to Radius Bank in the name of KMS Traders Group, LLC seeking PPP funds (the KMS Traders PPP Application). **Joseph** signed the KMS Traders PPP Application as the CEO of KMS Traders. **Joseph** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

24. The KMS Traders PPP Application falsely stated that KMS Traders' average monthly payroll was $816,342 and that the company had 97 employees. In support of the application, **Joseph** submitted several false payroll documents, including IRS Form 941s for KMS Traders, an IRS Form 940 for KMS Traders, and other fraudulent payroll records.

25. Radius Bank approved the KMS Traders PPP Application and, on June 25, 2020, dispersed PPP funds of $2,040,855 into KMS Traders' Radius Bank account xxxxxx3991. **Joseph** was the only individual with signatory authority on this account.

## Counts One through Seven

Violation: 18 U.S.C. § 1343<br>(Wire Fraud)

26. Paragraphs 1 through 25 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### Acts in Execution of the Scheme and Artifice

27. On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and obtain money from the victims, Bank 1 and the SBA, by means of false and fraudulent pretenses, representations, and promises, the defendant, **Sinoj Kallamplackal Joseph**, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce the writings, signs, signals, pictures, and sounds for the described below:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 1 | May 20, 2020 | MK Analytics PPP application electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |
| 2 | June 1, 2020 | MK Analytics PPP loan documents electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |
| 3 | June 1, 2020 | Interstate wire transfer of $267,187 from Bank 1 routed interstate to MK Analytics' account at Bank 2. |

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 4 | June 2, 2020 | Sanbi PPP application electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |
| 5 | June 19, 2020 | Sanbi PPP loan documents electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |
| 6 | June 23, 2020 | KMS Traders PPP application electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |
| 7 | June 25, 2020 | KMS Traders PPP loan documents electronically submitted by **Sinoj Kallamplackal Joseph** in Texas and routed by interstate wire through Bank 1's servers outside of Texas. |

All in violation of 18 U.S.C. § 1343.

## Counts Eight through Ten

<u>Violation</u>: 18 U.S.C. § 1014
(False Statement to Bank)

28. Paragraphs 1 through 25 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29. On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant, **Sinoj Kallamplackal Joseph**, knowingly made false statements with the intent to influence the actions of a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, to wit:

| Count | Approximate Date | False Statements |
|---|---|---|
| 8 | May 20, 2020 | In the MK Analytics PPP Application, **Sinoj Kallamplackal Joseph** falsely represented that MK Analytics had 4 employees and an average monthly payroll of $142,450. |
| 9 | June 2, 2020 | In the Sanbi PPP Application, **Sinoj Kallamplackal Joseph** falsely represented that Sanbi had 42 employees and an average monthly payroll of $370,835. |
| 10 | June 23, 2020 | In the KMS Traders PPP Application, **Sinoj Kallamplackal Joseph** falsely represented that KMS Traders had 97 employees and an average monthly payroll of $816,342. |

All in violation of 18 U.S.C. § 1014.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c)

As a result of committing the offenses as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c), any and all property, real or personal, involved in or traceable to property involved in the offense, including proceeds obtained directly or indirectly from the offense, and the following:

### Cash Proceeds

A sum of money equal to $5,608,170.58 in United States currency, and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by defendant as a result of the offenses alleged in this Indictment, for which the defendant is personally liable, the following amounts seized from the following accounts:

a) $65,158.33 from Radius Bank, Account Number 7160026329;

b) $929,680.50 from Radius Bank, Account Number 7160025867;

c) $2,043,234.95 from Radius Bank, Account Number 7160043991;

d) $171.24 from Discover Bank, Account Number 7002343548;

e) $845,549.55 from Comerica Bank, Account Number 1883128082;

f) $11,137.47 from Bank of America, Account Number 898077963793;

g) $109,283.74 from Bank of America, Account Number 488092960039;

h) $33,700.00 from Bank of America, Account Number 488092960039;

i) $166,306.39 from Bank of America, Account Number 488097820190;

j) $62,474.61 from Bank of America, Account Number 488040483377;

k) $1,061,031.06 from AZLO, Account Number 6787172936;

l) $155,738.63 from BancorpSouth, Account Number 7790-426-6;

m) $112,588.47 from BancorpSouth, Account Number 7790-425-8; and

n) $12,115.64 from Austin Telco Federal Credit Union, Account Number 1800261209.

**Substitute Assets**

If any property subject to forfeiture, as a result of any act or omission by the defendant:

a) cannot be located upon the exercise of due diligence;
b) has been transferred or sold to, or deposited with a third party;
c) has been placed beyond the jurisdiction of the court;
d) has been substantially diminished in value; or
e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by the defendant.

By virtue of the commission of the felony offenses charged in this Indictment, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

NICHOLAS J. GANJEI
ACTING UNITED STATES ATTORNEY

_____          10-13-2021
SEAN J. TAYLOR                     Date
Assistant United States Attorney

Indictment – Page 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 4:21-CR-____ <br> Judge _____ |
| SINOJ KALLAMPLACKAL JOSEPH | § | |

## NOTICE OF PENALTY

### Counts One through Seven

**VIOLATION:** 18 U.S.C. § 1343

**PENALTY:** Imprisonment for not more than 20 years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than 3 years.

**SPECIAL ASSESSMENT:** $100.00 each count

### Counts Eight through Ten

**VIOLATION:** 18 U.S.C. § 1014

**PENALTY:** Imprisonment for not more than 30 years; a fine not to exceed $1,000,000, a fine not to exceed two times the gross gain to the defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than 5 years.

**SPECIAL ASSESSMENT:** $100.00 each count